WILLIE HAMRICK v. THE STATE.

No. 12108. Delivered June 12, 1929.

The opinion states the case.

*J. Mitch Johnson* of San Saba and *J. Edward Johnson* of Brady, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for assault to murder; punishment, five years in the penitentiary.

In this case the court properly told the jury that same was one of circumstantial evidence. No witness saw the alleged assault. No statement of the injured party, or confession of the accused, sheds any light upon the case. G. B. Hamrick, the alleged injured party, who will be herein referred to as deceased, he having died some short time after the alleged occurrence, was the father of appellant; was very old, feeble, emaciated and bedridden. His doctor was a State witness, but testified that from his first visit to deceased in January prior to the alleged assault in March 1928, he knew deceased could not get well and held out no hopes that he could,—that his condition resulted not from disease but from old age and exposure earlier in his life. Another State witness testified that he had been sitting up with deceased nearly every night for a long time prior to the occurence here charged, and that he never knew any night whether deceased would live till morning. The doctor further testified that he examined deceased the day of the alleged assault and after same and found a number of wounds on his head and body which he described. Speaking of this he said: "I don't think the blows were sufficient to have caused any serious injury," and in another place he said that the wounds healed very nicely and were healed at the time of the death of deceased some five or six days after the alleged assault. The doctor also gave it as his opinion that death was not caused by the wounds, nor would he express any opinion as to whether same shortened the life of deceased or contributed to his death. He did say he thought the wounds had been inflicted within twenty or thirty minutes before his first examination.

Appellant and his father had each lived alone for a number of years on the same farm. Some six or seven months before this occurrence, deceased becoming bedridden and helpless, appellant had moved up into the two room house occupied by deceased for the purpose of taking care of him. On the afternoon charged herein, and at about 5 o'clock, parties observed smoke coming through the roof of this house and went to it. Appellant was lying down in a wagon bed in the yard, and all of the parties who saw him and observed his conduct that afternoon said he was drunk. He had what a witness called a small pistol which he exhibited in various ways and which was finally taken away from him. He was carried to jail and there

another similar pistol was found in his pocket. The men who observed the house on fire went to same and two of them carried deceased from the burning structure. One of them said when he got there he called the attention of appellant to the fact that the house was on fire, and that they would have to get the old man out, to which appellant replied: "I have been trying to get him to come out for half an hour, but G—d d—n it, he wont do it." The other of the men who helped carry deceased out of the house said appellant was "Blubbering and crying around there; grabbed up a bucket and asked them if they were not going to help him 'put out my house.'" This witness also said that appellant ran to the window of the burning house and said "Daddy, G—d d—n it, come out of there, don't you know you are going to burn up." It is observed that appellant slapped the doctor on the back when he got there and said "Hello doctor, I don't think much of you anyhow." That before the doctor came appellant was told to go and phone for him, and went off down the road holloing as loud as he could and waving his hands. Several witnesses testified he was walking around cursing and swearing. Practically every witness who was there testified appellant was drunk.

It is observed that before this conviction should stand, three things must have been established by testimony, viz: First, that appellant inflicted the wounds upon his father; second, that same were inflicted by a deadly weapon or some instrument which in the manner of its use was capable of inflicting death or serious bodily injury; third, that there was an intent on the part of appellant to kill his father by such means. Each of the above propositions, in a case like this, would be but an inference from the testimony.

It would not be unreasonable to conclude from the testimony that appellant inflicted the wounds upon his father. He was present, was drunk and boisterous, and there seems no suggestion in the record that the wounds could have been inflicted by anyone else. While as stated above, no one saw the wounds inflicted, and that there was no statement by deceased or by appellant to the effect that the latter did inflict the wounds, the freshness of them and the fact that appellant had a small pistol, and that the wounds found were such as might have been inflicted by such a weapon used to strike with, might be deemed sufficient to support the belief that appellant did inflict said wounds. That they were inflicted by a deadly weapon, or one which in the manner of its use was capable of inflicting death or serious

bodily injury,—seems under the facts of the case to be very doubtful. The character of the weapon used, as above stated, was but an inference from the wounds and from the fact that appellant was in possession of a small pistol. Mr. Branch says in Sec. 1587 of his Annotated P. C., that proof that the wounds inflicted were of a serious nature, and proof of the size and weight of the weapon, or either, and the manner of its use, might be sufficient to show that the weapon *as used,* was a deadly weapon. Many authorities are collated. Ashton v. State, 31 Texas. Crim. Rep. 479, and Walters v. State, 37 Texas Crim. Rep. 389, are among them. In the same section of said work, and upon authority of Skidmore v. State, 43 Tex. 93; Pierce v. State, 21 Texas Crim. App. 547; Jenkins v. State, 30 Texas Crim. App. 379, and many other decisions, it is said by the author that proof that a pistol was used as a bludgeon is insufficient to show that the assault was with a deadly weapon; that there should be proof of its size, weight and effect in order that the issue as to whether it was, *as used,* a deadly weapon might be fairly determined. In this connection we quote from the doctor's testimony in the instant case:

"During my experience as a physician, I have had experience with wounds inflicted upon the bodies of human beings. From the experience that I have had in things of that kind,—as to whether or not the wounds that I found on the body of G. B. Hamrick on that occasion were made with a deadly weapon: Of course, I have an idea in my own mind as to what that weapon would be,—from the nature of the wounds. I would have an idea of the weapon that was used. But, of course, that's just my idea,—just my opinion as to what was used. From the wounds that I found it was indicated that a deadly weapon had been used on that occasion, and in my opinion the weapon that I had in mind as having inflicted those wounds would produce death or serious bodily injury."

Analyzing this in the light of the further testimony of said witness that he did not think the blows sufficient to cause any serious injury, and that the wounds healed up nicely in five or six days; that notwithstanding the aged and feeble condition of deceased when such wounds were inflicted, witness did not think said wounds caused his death, and was unwilling to say that they contributed to it or hastened it; also in the light of the fact that the doctor knew appellant had a pistol which he had taken from him and the language above referred to, to-wit: that in his opinion the weapon he had in mind as having inflicted those wounds would produce death or

serious bodily injury,—we are forced to the conclusion that the doctor did not mean to say that by the use of the pistol in the manner in which it was used on the occasion of the infliction of these wounds, that said pistol was a deadly weapon, but that he had formed a conclusion from what he saw as to what kind of weapon was used in making these wounds and that such weapon was one with which death or serious bodily injury could be inflicted. The doctor had observed upon the head of deceased a number of small punctures; his left hand was skinned very badly; there was a gash over his eye; the small bone of one arm was broken. Speaking of the effect of these wounds observed by him, if same had been inflicted upon a man of ordinary health and strength the doctor said they would not have much effect on him. We are unable to bring ourselves to believe that there is sufficient testimony in this case showing that the small pistol, whose weight, size, etc., nowhere appear in the record, was shown to be a deadly weapon when used to strike with, as was manifestly done in this case.

Nor does it seem to us that the testimony makes out the necessary proposition of an intent to kill. Every witness asked relative thereto swore to appellant's good reputation as a peaceable, law-abiding citizen, and nothing appears derogatory save the fact that he drank and had been drinking intoxicating liquor for a long time. The fire was in early March. Holman, a State witness, said when he went in the house the fire was in the rafters and ceiling. Brown, another State witness, said the stove pipe was old and broken off right at the top of the house. Brown further said appellant was running around there trying to get the mattress out, crying and twisting his hands, and wanted to know if they were not going to help him put out the fire. Deceased was bedridden, lying upon a mattress on a bed spring on the floor in the shed of the little old house occupied by the two men. There is not a suggestion as to the origin of the fire save that arising from the condition of the stove, stove pipe, etc. State witness Holman testified that appellant told him that he had been trying for half an hour to get the old man out and that he would not come. State witness Brown said appellant ran to a window and called his father and told him to come out, that he would burn up. In a case of circumstantial evidence the rule is that the circumstances must be such as to exclude every other reasonable hypothesis except the guilt of the accused. It would seem as reasonable to conclude that appellant in his drunken and half crazed condition had gone into the little

house and beaten his father with the pistol in an effort to get him to get out upon discovery of the fire, as it would be to conclude that appellant who had moved up to take care of his father some months prior to this occurrence, and who had gone an hour before the fire to a neighbor to get him to endorse a note in order that he might have money to make a crop upon, and "Get some things for my daddy," and who had invited another neighbor to come in and see his father a couple of hours before the alleged assault,—would have deliberately and purposely assaulted his father and then set fire to the house for the purpose of burning him up.

There are a number of questions raised by bills of exception in the case, none of which seem to us to be of any very great materiality, but we are unable to bring ourselves, as we have above stated, to believe that the testimony in this case was sufficient to justify the belief that the weapon used by appellant was, in the manner of its use, a deadly weapon, or one when so used, capable of inflicting death or serious bodily injury; and we are, as above indicated, not satisfied that the proof made out a case beyond a reasonable doubt of an intent on the part of appellant to kill his father. So believing, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*